1    Abraham Mathew, State Bar No. 181110
2    Jacob George, State Bar No. 213612
     Mazyar Mazarei, State Bar No. 220849
3    **MATHEW & GEORGE**
     801 S. Grand Avenue, Suite 1610
4    Los Angeles, California 90017
     Telephone: (310) 478-4349
5    Fax: (310) 478-9580
6
     Attorney for Plaintiff
7    BASETI SHRIDHAR, Individually
     and as personal representative of Archana Kulkarni

**FILED**
Superior Court of California
County of Los Angeles

JAN 2 3 2014

Sherri R. Carter, Executive Officer/Clerk
By_____, Deputy
Shaunya Bolden

8    FSC: 07/09/2015 TRIAL: 07/23/2015 OSC: 01/23/2017

9         **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

10        **COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

11
12 BASETI SHRIDHAR, individually and as
    personal representative of Archana Kulkarni,

13
                 Plaintiff,
14
15        vs.
16 VANTAGE TRAVEL SERVICE, INC., a
    Massachusetts corporation dba VANTAGE
17 DELUXE WORLD TRAVEL; Finca
    PIEDRA, an unknown entity; and DOES 1
18 through 100,
19
                 Defendants.
20

Case No.    **B C 5 3 4 1 4 7**

**COMPLAINT FOR DAMAGES BASED UPON:**

1.  **WRONGFUL DEATH**
2.  **NEGLIGENCE**
3.  **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
4.  **LOSS OF CONSORTIUM**

[JURY TRIAL DEMANDED]

21
22
23                      **COMPLAINT**

24       Plaintiff BASETI SHRIDHAR, individually and as personal representative of Archana Kulkarni

25 ("Plaintiff") for his Complaint, alleges as follows:

26                     **INTRODUCTION**

27      1.     In or about October of 2012, Dr. Archana Kulkarni ("Dr. Kulkarni" or the "Decedent"),

28 and Baseti Shridhar, her husband, purchased a vacation package from Defendant VANTAGE

1
COMPLAINT FOR DAMAGES

1   TRAVEL SERVICE, INC., a Massachusetts corporation dba VANTAGE DELUXE WORLD

2   TRAVEL ("Vantage"). The planned trip was to South America.

3        2.      As part of the vacation package, the tour group was taken to the vineyards and ranch of

4   Defendant FINCA PIEDRA, an unknown entity ("Finca"). Members of the tour group were offered the

5   opportunity to ride horses on the ranch.

6        3.      As a result of the negligence of Defendants, their employees, representatives and/or

7   agents, Dr. Kulkarni was placed on a horse which was known to be temperamental without any safety

8   equipment and, as a result, was thrown from the horse and, ultimately, killed.

9                                    **THE PARTIES**

10       4.      Plaintiff, Baseti Shridhar, is an individual residing in Los Angeles County, California.

11  At all times mentioned herein, Plaintiff was the Decedent's spouse.  Plaintiff brings this action on his

12  own behalf and for the benefit of himself and the other heirs of the Decedent's estate.

13       5.      Defendant Vantage is a Massachusetts corporation.   Vantage is headquartered in

14  Boston, Massachusetts, but markets its business and sells its products in Los Angeles and throughout

    the United States.

15       6.      Defendant Finca is an unknown entity which operates a ranch and vineyard in or about

16  San Jose, Uruguay.

17       7.      Plaintiff does not know the true names or capacities of the persons or entities sued

18  herein as DOES 1-100, inclusive, and therefore sues said Defendants by such fictitious names.  Each

19  of the DOE Defendants was in some manner legally responsible for the violations alleged herein.

20  Plaintiff will amend this complaint to set forth the true names and capacities of these Defendants

21  when they have been ascertained, together with appropriate charging allegations, as may be

22  necessary.

23       8.      At all times mentioned herein, the Defendants named as DOES 1-100, inclusive, and

24  each of them, were residents of, doing business in, availed themselves of the jurisdiction of, and/or

25  injured Plaintiff in the State of California.

26       9.      At all times mentioned herein, each Defendant was the agent, servant, or employee of

27  the other Defendants and in acting and omitting to act as alleged herein did so within the course and

28  scope of that agency or employment.

Exhibit "1"
Page 7

## JURISDICTION AND VENUE

10.     The monetary damages and restitution sought by Plaintiff exceeds the minimal jurisdiction limits of the Superior Court and will be established according to proof at trial.   The penalties sought by Plaintiff exceed the minimal jurisdiction limits of the Superior Court and will be established according to proof at trial.

11.     This Court has jurisdiction over this action pursuant to the California Constitution, Article VI, section 10, which grants the Superior Court "original jurisdiction in all causes except those given by statute to other courts."   The statutes under which this action is brought do not specify any other basis for jurisdiction.

12.     This Court has jurisdiction over all Defendants because, upon information and belief, each party is either a citizen of California, has sufficient minimum contacts in California, or otherwise intentionally avails itself of the California market so as to render the exercise of jurisdiction over it by the California courts consistent with traditional notions of fair play and substantial justice. Specifically, this Court has jurisdiction over the subject matter of this action based on the facts that: (1) Vantage solicited Plaintiff and Decedent's business through unsolicited advertisements mailed to the Decedent's home in Los Angeles County, California; (2) the vacation package was purchased by the Decedent and her husband from their home in Los Angeles County, California; (3) the same vacation package was sold to other residents of California; and (3) the Decedent's passed away from her injuries in Los Angeles County, California.

13.     Venue is proper in this Court because, upon information and belief, one or more of the named Defendants transact business in this county and the acts and omissions alleged herein took place in this county.

## FACTS COMMON TO ALL CAUSE OF ACTION

14.     On or about October of 2012 Vantage advertised, for purchase, a vacation tour package during which purchasers would be taken to South American nations, including, but not limited to, Uruguay and Argentina.  The tour was to take place over 17 days in January 2013.

Exhibit "1"
Page 8

15. Dr. Kulkarni and her husband, Baseti Shridha, received unsolicited advertisements by mail for the above-described vacation tour package from Vantage. On or about October 17, 2012, Plaintiff and Dr. Kulkarni purchased two vacation packages.

16. On January 23, 2013, the tour members were led by Vantage's agent, tour guide Ignacio Giras ("Giras"), to a vineyard and ranch operated by Finca. The Finca property is located in or about San Jose, Uruguay.

17. While at the Finca property and under the supervision of Vantage's representative/agent Giras, the tour members were offered the opportunity to take a horseback ride on the Finca property. Dr. Kulkarni, along with fourteen (14) other tour group members, chose to take part in the horseback ride.

18. Finca and Vantage representatives proceeded to select horses to be ridden by tour group members. Each horse was led by Finca/Vantage representatives to a wooden corral area where there were tree stumps that were to be used by tour group members to mount their horses. Tour group members were not provided with any helmets or other safety equipment.

19. For Dr. Kulkarni, the Finca/Vantage representatives selected a light colored horse that refused to enter the wooded corral area for mounting. The Finca/Vantage representatives knew that this particular horse feared the wooden area and disliked the wooden stirrups that were used for mounting the horses. For that reason, the horse became agitated when being led to this area and when the wooden stirrups were used to mount said horse.

20. Because the horse refused to enter the wooded mounting area and/or have the wooden stirrups used to mount it, a Finca/Vantage representative was sent to get metal stirrups to make it easier for Dr. Kulkarni to mount the horse.

21. Despite the fact that the Finca/Vantage representatives knew that the horse assigned to Dr. Kulkarni was agitated and fearful of the mounting area and that another employee had been sent to get metal stirrups, the Finca/Vantage employees insisted that Dr. Kulkarni attempt to mount said horse with wooden stirrups. The Finca/Vantage representatives then hoisted Dr. Kulkarni onto the horse after three separate attempts.

4
COMPLAINT FOR DAMAGES

22.     Less than thirty seconds after being hoisted onto the horse, Dr. Kulkarni was thrown from the horse and the horse then landed on top of her.  There was no medical staff on hand to help Dr. Kulkarni.  Finca and Vantage representative/s did not provide adequate care in assisting Dr. Kulkarni with her injuries.  Dr. Kulkarni's fall and injuries were witnessed by other members of the tour group including Plaintiff.

23.     After some time, Dr. Kulkarni was taken from the Finca property by ambulance.  When they were informed of injuries, Dr. Kulkarni's children immediately flew to Uruguay to tend to their mother.  The family members then made arrangements to have Dr. Kulkarni flown back to the United States to receive urgent medical attention.

24.     Dr. Kulkarni was then flown from Uruguay to Los Angeles and was immediately taken to the UCLA Medical Center.

25.     On February 10, 2013, eighteen (18) days after the fall from the horse, Dr. Kulkarni, who was medevaced to the UCLA Medical Center in Los Angeles, died as a result of her injuries.

### FIRST CAUSE OF ACTION

#### (Wrongful Death - Negligence)

*Against All Defendants*

26.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 25, above.

27.     The Finca and Vantage representatives who were present were well aware that the horse selected for Dr. Kulkarni was in an agitated state and did not want to be mounted near the wooded corral area.

28.     Instead of selecting a different horse or waiting to mount the horse in an different area using metal stirrups or steps, Finca/Vantage representatives hoisted Dr. Kulkarni onto the horse.

29.     On January 23, 2013, as a direct and proximate result of Vantage and Fincas' failure to supervise its employees and failure to act with due care in forcing Dr. Kulkarni to mount a dangerous horse without any helmets or safety equipment, Dr. Kulkarni suffered fatal injuries.  As a result of those injuries, Dr. Kulkarni passed away on February 10, 2013 in Los Angeles, California.

30.     At the time of the injury to Dr. Kulkarni, Defendants, and each of them, were aware of

1 | said dangerous condition posed by the agitated horse and did nothing to prevent the horse from injuring

2 | and ultimately killing Dr. Kulkarni.

3 | 31.    While upon the Finca property, and as a direct and proximate result of the

4 | aforementioned negligence, carelessness, recklessness, and unlawfulness of Defendants, and each of

5 | them, Plaintiff was caused to fall off the selected horse and sustain injuries leading to her death.

6 | 32.    As a direct and proximate result of Vantage and Finca's failure to supervise its

7 | employees and failure to act with due care in forcing Dr. Kulkarni to mount a dangerous horse

8 | without any helmets or safety equipment, Dr. Kulkarni suffered fatal injuries.

9 | 33.    As a result of the death of Dr. Kulkarni, Plaintiff has suffered damages including, but

10 | not limited to medical expenses, medevac expenses, travel expenses, funeral/memorial expenses, losses

11 | of income and losses of financial support in amounts to be proven at trial.

12 | 34.    Defendants' outrageous conduct was malicious and done in wanton disregard for the

13 | safety and well-being of Dr. Kulkarni and the rights and duties owed by Defendants to the decedent.

14 | Each Defendant aided, abetted, participated in, authorized, ratified, and/or conspired to engage in the

15 | wrongful conduct alleged above.   Plaintiff should therefore be awarded exemplary and punitive

16 | damages against each Defendant in the amount to be established that is appropriate to punish each

17 | Defendant and deter others from engaging in such conduct.

## SECOND CAUSE OF ACTION

### (Negligence)

*Against All Defendants*

21 | 35.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth

22 | in paragraphs 1 through 34, above.

23 | 36.    As the tour organizers, Vantage had a legal obligation to ensure the safety of its tour

24 | members and to avoid placing those tour members in harm's way.

25 | 37.    As the operators of the ranch, Finca also had a legal obligation to ensure the safety of

26 | visitors to the ranch and to ensure that those partaking in the activities offered by Finca were

27 | protected from harm.

28 |

Exhibit "1"
Page 11

38.    Vantage and Finca breached those duties by placing Dr. Kulkarni in danger as follows:

    a.   Defendants failed to assign a different horse to Dr. Kulkarni even though they knew that the horse at issue was agitated and dangerous;

    b.   Defendants took tour group members to a facility that did not have any safety measures in place for those choosing to ride horses;

    c.   Defendants took tour group members to a facility without any medical help on hand to treat injured tour group members; and

    d.   Defendants forced Dr. Kulkarni to mount a dangerous animal instead of waiting for metal steps to be provided.

39.    Defendants, and each of them, negligently, carelessly, recklessly and unlawfully operated and/or maintained the property on which the death occurred and failed to take reasonable steps to prevent, warn or correct a dangerous condition on the property to make it safe for Plaintiff and for other persons coming onto the Premises and participating in offered activities.

40.    At the time of the injury to Dr. Kulkarni, Defendants, and each of them, were aware of said dangerous condition posed by the agitated horse and did nothing to prevent the horse from injuring and ultimately killing Dr. Kulkarni.

41.    While upon the Finca property, and as a direct and proximate result of the aforementioned negligence, carelessness, recklessness, and unlawfulness of Defendants, and each of them, Plaintiff was caused to fall off the selected horse and sustain injuries leading to her death.

42.    As a direct and proximate result of Vantage and Finca' failure to supervise its employees and failure to act with due care in forcing Dr. Kulkarni to mount a dangerous horse without any helmets or safety equipment, Dr. Kulkarni suffered fatal injuries.

43.    As a result of the death of Dr. Kulkarni, Plaintiff has suffered damages including, but not limited to medical expenses, medevac expenses, travel expenses, funeral/memorial expenses, losses of income and losses of financial support in amounts to be proven at trial.

44.    Defendants' outrageous conduct was malicious and done in wanton disregard for the safety and well-being of Dr. Kulkarni and the rights and duties owed by Defendants to the decedent.

1   Each Defendant aided, abetted, participated in, authorized, ratified, and/or conspired to engage in the

2   wrongful conduct alleged above.   Plaintiff should therefore be awarded exemplary and punitive

3   damages against each Defendant in the amount to be established that is appropriate to punish each

4   Defendant and deter others from engaging in such conduct.

5                                    **THIRD CAUSE OF ACTION**

6                                   **(Negligent Infliction of Emotional Distress)**

7                                         *Against All Defendants*

8        45.   Plaintiff re-alleges and incorporates by reference each and every allegation set forth

9   in paragraphs 1 through 44, above.

10       46.   In failing and/or refusing to take measures to ensure the safety of its tour members,

11  Defendants engaged in negligent conduct as described above.

12       47.   As a result of Defendants' negligence, as described above, Plaintiff was forced to

13  witness his wife's fall, subsequent injuries and death.

14       48.   As a proximate result of Defendant's wrongful acts, Plaintiff has suffered and

15  continues to suffer severe emotional distress, anxiety, and mental anguish, as well as the

16  manifestation of physical symptoms.  Plaintiff is informed and believes and thereupon alleges that he

17  will continue to experience said physical and emotional suffering for a period in the future not

18  presently ascertainable, all in an amount subject to proof at the time of trial.

19                                   **FOURTH CAUSE OF ACTION**

20                                          **(Loss of Consortium)**

21                                         *Against All Defendants*

22       49.   Plaintiff re-alleges and incorporates by reference each and every allegation set forth

23  in paragraphs 1 through 48, above.

24       50.   On January 23, 2013, as a direct and proximate result of Vantage and Fincas' failure to

25  supervise its employees and failure to act with due care in forcing Dr. Kulkarni to mount a dangerous

26  horse without any helmets or safety equipment, Dr. Kulkarni suffered fatal injuries.  As a result of

27  those injuries, Dr. Kulkarni passed away on February 10, 2013 in Los Angeles, California.

28       51.   At the time of the injury to Dr. Kulkarni, Defendants, and each of them, were aware of

                                                    8
                                      COMPLAINT FOR DAMAGES

1  said dangerous condition posed by the agitated horse and did nothing to prevent the horse from injuring

2  and ultimately killing Dr. Kulkarni.

3      52.    While on the Finca property, and as a direct and proximate result of the aforementioned

4  negligence, carelessness, recklessness, and unlawfulness of Defendants, and each of them, Plaintiff was

5  caused to fall off the selected horse and sustain injuries leading to her death.

6      53.    As a direct and proximate result of Vantage and Finca's failure to supervise its

7  employees and failure to act with due care in forcing Dr. Kulkarni to mount a dangerous horse

8  without any helmets or safety equipment, Dr. Kulkarni suffered fatal injuries.

9      54.    As a direct and proximate result of the negligence of Defendants in causing the death

10 of Dr. Kulkarni, Plaintiff has been deprived of the society and comfort of the Decedent and has been

11 caused the loss of future services, earnings and protection of his spouse, to his great loss and

12 damage in an amount to be shown according to proof.

13     55.    Before suffering these injuries, Dr. Kulkarni was able to and did perform all the

14 duties of a wife and did perform all these duties, including assisting in maintaining the home, and

15 providing love, companionship, affection, society, sexual relations, moral support, and solace to

16 Plaintiff.

17     56.    As a direct and proximate result of the injuries, Plaintiff will be permanently

18 deprived of Dr. Kulkarni's consortium, all to Plaintiff's damage, in a total amount to be established

19 by proof at trial.

20                                    **PRAYER**

21

22     **WHEREFORE,** Plaintiff requests judgment against Defendants as follows:

23 **ON FIRST CAUSE OF ACTION:**

24     1.     Compensatory damages according to proof at trial;

25     2.     Punitive damages according to proof at trial;

26     3.     Attorneys' fees; and

27     2.     For the costs of suit incurred herein.

28

                                        9

1   <u>ON SECOND CAUSE OF ACTION:</u>

2       1.      Compensatory damages according to proof at trial;

3       2.      Punitive damages according to proof at trial;

4       3.      Attorneys' fees; and

5       2.      For the costs of suit incurred herein.

6   <u>ON THIRD CAUSE OF ACTION:</u>

7       1.      Compensatory damages according to proof at trial;

8       2.      Punitive damages according to proof at trial;

9       3.      Attorneys' fees; and

10      2.      For the costs of suit incurred herein.

11  <u>ON FOURTH CAUSE OF ACTION:</u>

12      1.      Compensatory damages according to proof at trial;

13      2.      Punitive damages according to proof at trial;

14      3.      Attorneys' fees; and

15      2.      For the costs of suit incurred herein.

16  <u>ON ALL CAUSES OF ACTION:</u>

17      1.      The costs of suit incurred herein; and

18      3.      Such other and further relief as the Court may deem just and proper.

19

20      **PLAINTIFF HEREBY DEMANDS A JURY TRIAL PURSUANT TO FRCP § 38(b)**

21

22  Dated: January 22, 2014            **MATHEW & GEORGE**

23

24                          By: _____

25                          Abraham Mathew

26                          Jacob George

27                          Mazyar Mazarei

28                          Attorney for Plaintiff