**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 14-09793-BRO (PJWx) | | Date | January 7, 2016 |
|---|---|---|---|---|
| Title | BASETI SHRIDHAR V. VANTAGE TRAVEL SERVICE, INC., ET AL. | | | |

Present: The Honorable     **BEVERLY REID O'CONNELL, United States District Judge**

| Renee A. Fisher | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     (IN CHAMBERS)

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [23]

## I.  INTRODUCTION

Pending before the Court is Defendant Vantage Travel Service, Inc.'s ("Defendant") Motion for Summary Judgment, or in the alternative, Motion for Partial Summary Judgment, against Plaintiffs Baseti Shridhar, Manjusha Prakash Kulkarni, Sonal Prakash Kulkarni, and Preeti Prakash Kulkarni (collectively, "Plaintiffs"). (Dkt. No. 23.) Defendant seeks summary judgment on all of the claims in Plaintiffs' First Amended Complaint ("FAC"). (*Id.*) Plaintiffs allege the following causes of action in their FAC, each of which regards Defendant's purported negligence: (1) wrongful death; (2) survival action; (3) negligent infliction of emotional distress ("NIED"); and, (4) loss of consortium. (Dkt. No. 18.) For the following reasons, Defendant's Motion is **GRANTED** in its entirety.

## II.  BACKGROUND

### A.  Factual Background

The facts giving rise to this action stem from fatal injuries sustained by seventy-one-year-old Archana Kulkarni ("Decedent") while horseback riding on a tour of South America. (Def.'s Statement of Uncontroverted Facts ("SUF") ¶¶ 3, 17; Decl. of Baseti Shridhar ("Shridhar Decl.") ¶¶ 10–11, 13–14; Decl. of Candy Hogan ("Hogan Decl.") at 2.) Defendant is a tour operator headquartered in Boston, Massachusetts, which packages tours for customers by selecting independent third party service providers, such as ground

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 14-09793-BRO (PJWx)** | Date | January 7, 2016 |
|---|---|---|---|
| Title | **BASETI SHRIDHAR V. VANTAGE TRAVEL SERVICE, INC., ET AL.** | | |

operators, excursion providers, restaurants, and hotels.  (SUF ¶¶ 1–2; Decl. of Carol Ferullo ("Ferullo Decl.") ¶ 4.)  On or about October 12, 2012, Decedent and her husband, Plaintiff Baseti Shridhar, each purchased a vacation package from Defendant for a seventeen-day tour of South America.  (SUF ¶¶ 1, 12; Ferullo Decl. ¶ 4; Shridhar Decl. ¶ 3, Ex. A.)  One of the events on the tour involved a visit to a vineyard and ranch in Montevideo, Uruguay, called Estancia Finca Piedra (the "Ranch").  (Shridhar Decl. ¶¶ 5, 10.)  On January 23, 2013, Decedent, Plaintiff Shridhar, and the other members of the tour visited the Ranch in Montevideo.  (Shridhar Decl. ¶¶ 10–11.)

Accompanying the tour group was Ignacio Eiras ("Mr. Eiras"), a Program Manager for Defendant responsible for guiding the tour group to all tour destinations.  (Shridhar Decl. ¶ 9; Dep. of Carol Ferullo ("Ferullo Dep.") at 122:8–10.)  According to Defendant's Vice President of Tour Operations, Carol Ferullo, Mr. Eiras "assist[ed] and support[ed]" Defendant's third-party vendors[1] "to ensure that all of the included features [of the pre-packaged tours] [we]re delivered as advertised."  (Ferullo Dep. at 122:10–12.)  Mr. Eiras also "assist[ed] and support[ed] [Defendant's] customers as needed; in other words, if there [was] something that [they were] looking for that they [could not] find or if there [was] a special something that they would [have] prefer[red] to eat . . . he [would take] care of them."  (Ferullo Dep. at 122:13–17.)  When asked whether Defendant expected Mr. Eiras to make sure the customers had a "safe, healthy, and happy journey," Ms. Ferullo replied, "That's correct."  (Ferullo Dep. at 122:23–123:8.)  Ms. Ferullo also indicated that Mr. Eiras was required to accompany the customers during transportation, which Defendant arranged, (Ferullo Dep. at 123:9–20); follow a "day-by-day itinerary that [Defendant] provide[d]," which Mr. Eiras was not permitted to alter without Defendant's approval, (Ferullo Dep. at 123:23–128:20); and wear a uniform displaying Defendant's name and logo, (Ferullo Dep. at 131:6–14).

---

[1] One such vendor was Viajes Baume's, S.A. ("Viajes"), a "ground operator" located in Uruguay with whom Defendant contracted "to provide ground operator services to its travelers while in Uruguay." (Ferullo Decl. ¶ 5, Exs. A–C.)  It is undisputed that Defendant at no time owned, operated, controlled, or managed Viajes, nor did Defendant ever employ Viajes's drivers or tour guides.  (*See* Pls.' Statement of Undisputed Facts and Genuine Issues ("SUFGI") ¶ 6.)  Defendant claims, on information and belief, that Viajes maintained a contractual relationship with the Ranch.  (Ferullo Decl. ¶ 7.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 14-09793-BRO (PJWx) | Date | January 7, 2016 |
|---|---|---|---|
| Title | BASETI SHRIDHAR V. VANTAGE TRAVEL SERVICE, INC., ET AL. | | |

While at the Ranch, tour members were offered an opportunity to participate in a horseback tour of the property. (Shridhar Decl. ¶ 11.) Decedent volunteered to take part in the activity and indicated that she had ridden horses a few times in her life. (*Id.*) After signing a liability release form,[2] (Decl. of Ignacio Eiras ("Eiras Decl.") ¶ 6, Ex. A), Decedent was paired with a horse to ride through the property, (Eiras Decl. ¶ 6; Shridhar Decl. ¶¶ 10–11). According to other tour participants present at the Ranch that day, the horse with which Decedent was paired would not approach the area designated for mounting. (Decl. of Suzanne Barile ("Barile Decl.") at 1–2; Hogan Decl. at 2.) The

---

[2] The liability release form provided as follows:

In consideration of the undersigned participant being allowed to participate in:

**HORSEBACK RIDING**

And for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by me, I hereby and for my heirs, beneficiaries, executors, and administrators, release and discharge Viajes Buemes, S.A., its affiliates (as hereinafter defined) and their employees, officers and directors and Estancia Finca Piedra, and its affiliates, and their employees, officers and directors from any claim, liability, demand, suit, action, loss, injury, damage, or expense which the undersigned may suffer, directly or indirectly, arising out of or relating to said participation and arising from or resulting from the ordinary negligence of Viajes Bueme's S.A. or Estancia Finca Piedra. As used herein, the term "Affiliate" means any person or entity that directly or indirectly controls, or is controlled by, or is under common control with such other person or entity, but shall not include independent contractors, suppliers or the like.

I hereby affirm that my participation in the program is voluntary. I acknowledge that the program is not risk-free and could result in injury, death or other loss or damage.

I understand and agree that, except as otherwise provided herein, I am solely responsible for any and all damages and expenses arising out of or related to any injury sustained in connection with said participation. I further understand and agree that Viajes Beume's S.A. and Estancia Finca Piedra are not undertaking to provide, directly or indirectly, any care or treatment which may be required in the event of injury in connection with said participation.

(Eiras Decl. ¶ 6, Ex. A.)

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 14-09793-BRO (PJWx)** | Date | January 7, 2016 |
|----------|----------------------------|------|-----------------|
| Title | **BASETI SHRIDHAR V. VANTAGE TRAVEL SERVICE, INC., ET AL.** | | |

witnesses also stated that Decedent's horse was particularly "skittish," "spooked," "unstable," and "antsy." (Barile Decl. at 2; Hogan Decl. at 2–3; Decl. of Carl Mitchell ("Mitchell Decl.") at 2.) One witness, Carl Mitchell, stated that a Ranch employee "was trying to help [Decedent] . . . mount[, but] . . . the horse was shying away, counterclockwise, in a forty-five to ninety degree angle." (Mitchell Decl. at 2.) According to Mr. Mitchell, after two failed attempts at helping Decedent mount the horse, the Ranch employee grabbed Decedent's belt and lifted her onto the horse. (*Id.*) A short time later, the horse "began jumping around and turning in a circle." (Decl. of Michael Verlatti ("Verlatti Decl.") at 2.) The horse then fell over on its side with Decedent still mounted on it, causing Decedent's head to hit the ground. (*Id.*) The horse quickly jumped back to its feet, but Decedent remained lying on the ground. (*Id.*) On February 10, 2013, Decedent died as a result of the head injuries she sustained in the fall. (Decl. of Dr. Gary Ciment ("Dr. Ciment Decl.") ¶ 4a.)

## B. Procedural Background

Plaintiff Baseti Shridhar initiated this action on January 23, 2014, filing his Original Complaint in Superior Court for the State of California, County of Los Angeles. (Dkt. No. 1-1.) Defendant subsequently removed the case to this Court on December 23, 2014. (Dkt. No. 1.) Plaintiff Shridhar then filed the FAC, naming Decedent's daughters Manjusha Prakash Kulkarni, Sonal Prakash Kulkarni, and Preeti Prakash Kulkarni as additional plaintiffs. (Dkt. No. 18.)

On October 22, 2015, Defendant filed the instant Motion for Summary Judgment, or in the alternative, Partial Summary Judgment. (Dkt. No. 23.) Defendant's Motion is accompanied by declarations of Andre M. Piccuirro, Carol Ferullo, and Ignacio Eiras. (Dkt. Nos. 26–28.) After striking the motion as untimely and in violation of the Court's scheduling and standing orders, (Dkt. No. 35), the Court reinstated the motion, setting the hearing date for December 30, 2015, (Dkt. No. 45). Plaintiffs filed their Opposition on December 7, 2015, (Dkt. No. 50), accompanied by declarations of Jacob George, Plaintiff Baseti Shridhar, Plaintiff Manjusha Prakash Kulkarni, Plaintiff Preeti Prakash Kulkarni, Rod Bergen, PE, Dr. Gary Ciment, Rodney E. Gould, Esq., Suzanne Barile, Candy Hogan, Carl Mitchell, and Michael Verlatti. (Dkt. Nos. 52–62.) Defendant timely replied on December 14, 2015. (Dkt. No. 66.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 14-09793-BRO (PJWx) | Date | January 7, 2016 |
|---|---|---|---|
| Title | BASETI SHRIDHAR V. VANTAGE TRAVEL SERVICE, INC., ET AL. | | |

## III.  EVIDENTIARY OBJECTIONS

### A.  Plaintiffs' Evidentiary Objections

Plaintiffs raise a total of ten objections to evidence Defendant submits in support of its Motion.  (Pls.' Objs. to Def.'s Evid. ("Pls.' Objs.") at 2–6.)  Specifically, Plaintiffs object to certain statements in the declarations of Carol Ferullo and Ignacio Eiras on the grounds that the declarants lack personal knowledge, the statements lack foundation or are conclusory, the statements are inadmissible hearsay, the testimony is an improper lay witness opinion, or the evidence should be disregarded under the best evidence rule.  "In motions for summary judgment with numerous objections, it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised."  *Doe v. Starbucks, Inc.*, No. 08–0582, 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009).  "This is especially true when many of the objections are boilerplate recitations of evidentiary principles or blanket objections without analysis applied to specific items of evidence."  *Id.*; *see also Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1033 (C.D. Cal. 2013) (explaining that "the Court will not scrutinize each objection and give a full analysis of identical objections raised as to each fact").

Here, Plaintiffs offer only "blanket objections without analysis applied to specific items of evidence."  *Starbucks, Inc.*, 2009 WL 5183773, at *1.  Further, the vast majority of Plaintiffs' objections are without merit.  For example, Plaintiffs claim that Defendant's Vice President of Tour Operations, Carol Ferullo, lacks personal knowledge to testify that Defendant "has never shared profits or losses with Viajes Beume's or the Ranch." (Ferullo Decl. ¶ 9; Pls.' Objs. at 3.)  As a Vice President of the company, it is a reasonable inference that Ms. Ferullo possesses the requisite knowledge to testify regarding Defendant's business affairs.  *See Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D. Cal. 2007) ("Personal knowledge can be inferred from a declarant's position within a company or business.")

With respect to the remaining objections, the Court either does not rely on the objected-to statements, or the objections are without merit.  To the extent the Court does not rely on the statements, Plaintiffs' objections are **OVERRULED as moot**.  With

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 14-09793-BRO (PJWx) | | Date | January 7, 2016 |
|----------|------------------------|---|------|-----------------|
| Title | BASETI SHRIDHAR V. VANTAGE TRAVEL SERVICE, INC., ET AL. | | | |

respect to the remaining objected-to statements, the Plaintiffs' objections are
**OVERRULED**.

## B.   Defendant's Objections

Defendant raises sixty-one objections to evidence Plaintiffs proffer in support of
their Opposition to Defendant's Motion.  (Def.'s Evidentiary Objs. ("Def.'s Objs.") ¶¶ 1–
61.)  With respect to the vast majority of Defendant's objections, the Court does not rely
on the objected-to evidence in deciding Defendant's Motion.  Defendant's evidentiary
objections are **OVERRULED as moot** to the extent the Court does not rely on the
evidence.[3]  Further, like Plaintiffs, Defendant provides only boilerplate, blanket
objections without analysis.  For example, in objecting to statements in the declaration of
Plaintiff Shridhar, Defendant states, "Best Evidence Rule. [FRE 1002]."  (*See* Def.'s
Objs. ¶ 1.)  Setting aside the fact there is no writing, recording, or photograph referenced
in the objected-to evidence that would warrant application of the best evidence rule,
Defendant provides no analysis explaining the objection.  This applies to all evidence to
which Defendant objects.  Notwithstanding Defendant's lack of analysis, the Court will
address some of Defendant's objections.

## 1.   Ignacio Eiras's Statements

Defendant objects to a number of statements in Plaintiff Shridhar's and Plaintiff
Preeti's declarations referencing statements made to them by Mr. Erias.  (Def.'s Objs.
¶¶ 1–4, 14–21.)  Rules 801 and 802 of the Federal Rules of Evidence govern the hearsay
rule and generally prohibit the admission of statements made out of court that are being
offered to prove the truth of the matters asserted.  Fed. R. Evid. 801, 802.  However, Rule
801(d)(2)(D) provides that a statement offered against the opposing party that was made
by the party's agent or employee on a matter within the scope of that relationship while
the relationship existed is not hearsay.  Fed. R. Evid. 801(d)(2)(D).  As discussed in more

---

[3] For example, Defendant objects to the declaration of Rodney E. Gould, an attorney upon which
Plaintiffs rely to support their Opposition to Defendant's Motion.  (Dkt. No. 58.)  Mr. Gould provides a
series of legal conclusions upon which the Court does not rely in deciding Defendant's Motion.  (Decl.
of Rodney E. Gould, Esq. ¶¶ 11–21.)  For this reason, Defendant's objections to Mr. Gould's declaration
are **OVERRULED as moot**.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 14-09793-BRO (PJWx) | Date | January 7, 2016 |
|---|---|---|---|
| Title | BASETI SHRIDHAR V. VANTAGE TRAVEL SERVICE, INC., ET AL. | | |

detail below, Mr. Eiras was an employee of Defendant at all relevant times. *See* discussion *infra* Section V.C.2. Accordingly, Defendant's objections are **OVERRULED** to the extent Defendant objects to Mr. Eiras's statements that were made during his employment and within the scope of his employment.

### 2.    Connie Stickforth's Statements

Defendant also raises a hearsay objection to the declaration of Plaintiff Manjusha with respect to her references to statements made to her by Connie Stickforth. (Def.'s Objs. ¶¶ 9–11.) According to Ms. Ferullo, Ms. Stickforth was an employee of Defendant who served as a Regional Planning and Development Associate in Buenos Aires, Argentina. (Ferullo Dep. at 95:8–11, 96:8–97:14.) The hearsay rules are stated above. Given that Ms. Stickforth was an employee of Defendant at the time she made the statements, and because the statements were reasonably within the scope of Ms. Stickforth's employment, Defendant's objections regarding these statements are **OVERRULED**.

### 3.    Declaration of Rod Bergen

Defendant objects to many statements in the declaration of Rod Bergen, a purported expert in horseback riding who opines on the events that took place at the Ranch on January 23, 2013. (Def.'s Objs. ¶¶ 22–30.) The Court does not rely on almost all of Mr. Bergen's statements, as they are either conclusory, (*see* Decl. of Rod Bergen ("Bergen Decl.") ¶¶ 10, 17), based upon insufficient facts or data, (*see* Bergen Decl. ¶¶ 11–12, 18), not expert opinions, (Bergen Decl. ¶ 13), or outside the scope of Mr. Bergen's expertise, (*see* Bergen Decl. ¶¶ 21–22). With respect to the statements upon which the Court does not rely, Defendant's objections are **OVERRULED as moot**. The only statement within Mr. Bergen's expertise which the Court relies upon is as follows, "[a]ll horses that were offered to the riding guests should [have] be[en] physically sound and emotionally stable." (Bergen Decl. ¶ 18.) With respect to this statement, Defendant's objection is **OVERRULED**.

| Case No. | **CV 14-09793-BRO (PJWx)** | Date | January 7, 2016 |
|---|---|---|---|
| Title | **BASETI SHRIDHAR V. VANTAGE TRAVEL SERVICE, INC., ET AL.** | | |

## IV.   LEGAL STANDARD

Summary judgment is appropriate when, after adequate discovery, the evidence demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A disputed fact is material where its resolution might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party. *Id.* The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The moving party may satisfy that burden by showing "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325.

Once the moving party has met its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-moving party must go beyond the pleadings and identify specific facts that show a genuine issue for trial. *Id.* at 587. Only genuine disputes over facts that might affect the outcome of the lawsuit will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248; *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (holding that the non-moving party must present specific evidence from which a reasonable jury could return a verdict in its favor). A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).

A court may consider the pleadings, discovery, and disclosure materials, as well as any affidavits on file. Fed. R. Civ. P. 56(c)(2). Where the moving party's version of events differs from the non-moving party's version, a court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Although a court may rely on materials in the record that neither party cited, it need only consider cited materials. Fed. R. Civ. P. 56(c)(3). Therefore, a court may properly rely on the non-moving party to identify specifically the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

| Case No. | CV 14-09793-BRO (PJWx) | Date | January 7, 2016 |
|---|---|---|---|
| Title | BASETI SHRIDHAR V. VANTAGE TRAVEL SERVICE, INC., ET AL. | | |

Finally, the evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson*, 477 U.S. at 253.

## V. DISCUSSION

As discussed above, Defendant seeks summary judgment on all of Plaintiffs' claims. (Mot. at 25.) Namely, Defendant argues that the Court should find the following as a matter of law: (1) that Defendant was not negligent in selecting the Ranch as an independent, third-party vendor, (Mot. at 20–23); (2) that Plaintiff Shridhar cannot prevail on his NIED claim because he did not perceive Decedent's fall, (Mot. at 23–24); (3) that Defendant is not liable for Decedent's injuries because it was not negligent, is not liable for the negligence of independent contractors, and Decedent expressly and impliedly assumed the risk of injuries caused by horseback riding, (Mot. at 4–19); and, (4) Plaintiff Shridhar cannot prevail on his loss of consortium claim because Defendant was not negligent, (Mot. at 24–25).

### A. Negligent Selection

As discussed above, Plaintiffs claim that Defendant was negligent in selecting the Ranch as an independent contractor to provide services to Defendant's client-tourists. (First Am. Compl. ("FAC") ¶¶ 35–37.) Defendant contends that it should prevail as a matter of law on this claim because both Viajes and the Ranch were reputable entities. (Mot. at 20; Reply at 10–11.) Further, Defendant argues that it did not select the Ranch as a vendor; rather, Defendant contracted with Viajes, and Viajes contracted with the Ranch. (Reply at 10–11.) Plaintiffs maintain that Defendant did in fact select the Ranch as a vendor, citing the declaration of Carol Ferullo, who stated that South American buyer and employee of Defendant, Connie Stickforth, was expected to vet the Ranch and determine whether it met Defendant's safety standards. (Opp'n at 21.) Plaintiffs also cite the declaration of Plaintiff Manjusha, who claims that Ms. Stickforth "admitted to [Plaintiff Manjusha] that she selected [the Ranch] as a destination for [Defendant's]

**LINK:**

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 14-09793-BRO (PJWx) | Date | January 7, 2016 |
|----------|------------------------|------|-----------------|
| Title | BASETI SHRIDHAR V. VANTAGE TRAVEL SERVICE, INC., ET AL. | | |

tours." (Opp'n at 21; *see also* Decl. of Manjusha Prakash Kulkarni ("Manjusha Decl.") ¶ 8.) Defendant responds that even assuming Defendant selected the Ranch, Plaintiff proffers no evidence indicating that the Ranch was objectively unfit or incompetent at the time Defendant allegedly chose it as a vendor. (Reply at 11.)

To prevail on any negligence claim, the plaintiff must establish the following: "a duty, a breach of that duty, [and] an injury to the plaintiff as a proximate result of that breach." *Ramage v. Forbes Int'l, Inc.*, 987 F. Supp. 810, 817 (C.D. Cal. 1997) (citing *Krawitz v. Rusch*, 209 Cal. App. 3d 957, 963 (Cal. Ct. App. 1989)). "The scope of the duty of tour operators in selecting independent operators is broad and only compels a general inquiry by the tour operator into the safety of the independent operator." *Ramage*, 987 F. Supp. at 813. In other words, "[t]he duty of care is met by a general inquiry into the contractor's competence." *Id.* at 818.

Here, Plaintiffs' own evidence establishes that Defendant inquired into the safety of the Ranch. Namely, Plaintiff Manjusha declares that, in a telephone conversation with Plaintiff Manjusha, "Ms. Stickforth stated that she was the Vantage buyer in South America responsible for inspecting, selecting and managing tour activities. She further stated that she was the Vantage employee who inspected and selected [the Ranch] as a Vantage tour destination." (Manjusha Decl. ¶ 8.) Ms. Ferullo's deposition statements support this fact. In response to a question asking whether Ms. Stickforth would have actually gone to the Ranch to vet the quality of the Ranch, Ms. Ferullo responded that Ms. Stickforth would have been expected to do so. (*See* Ferullo Dep. at 95:12–18.) Ms. Ferullo then clarified that Ms. Stickforth's principal role was to find a ground handler, e.g. Viajes, which is what she did, (Ferullo Dep. at 95:19–20); but Ms. Ferullo could not say for certain whether Ms. Stickforth actually visited the Ranch, although that was the expectation. (Ferullo Dep. at 95:22–96:1.) However, Ms. Stickforth's statements to Plaintiff Manjusha indicate that Ms. Stickforth fulfilled Defendant's expectation.

Thus, based on the evidence before the Court, no genuine dispute exists as to whether Ms. Stickforth inspected the Ranch and thus generally inquired into the Ranch's competence as an independent contractor. Further, Mr. Eiras testifies that the Ranch enjoys a good reputation in the area, (Eiras Decl. ¶ 4), and that in his twelve to fifteen visits to the Ranch, he has observed that the facilities are well-maintained, he has never observed another traveler fall from a horse, and he has never received a complaint

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 14-09793-BRO (PJWx) | Date | January 7, 2016 |
|---|---|---|---|
| Title | BASETI SHRIDHAR V. VANTAGE TRAVEL SERVICE, INC., ET AL. | | |

regarding the horseback riding activity, (Eiras Decl. ¶ 5). Moreover, Defendant ensures the continuing quality of its vendors, such as the Ranch, by analyzing customer service reviews. (Ferullo Decl. ¶ 13.) Prior to the incident on January 23, 2013, Defendant had not received any reports of events that would have put Defendant on notice of the Ranch's unfitness as a third-party vendor. (*Id.*)

Accordingly, because there is no genuine dispute that (1) Defendant inquired generally into the safety of the Ranch, (2) the Ranch enjoys a good reputation, and (3) Defendant continuously monitored the quality of the services provided by the Ranch, Defendant was not negligent in selecting the Ranch as an independent contractor. The Court therefore **GRANTS** Defendant's Motion as to Plaintiffs' negligent selection claim.

### B.      Negligent Infliction of Emotional Distress

As discussed above, Plaintiff Shridhar seeks to recover emotional damages suffered as a result of Defendant's purported negligent infliction of emotional distress. (FAC ¶¶ 47–50.) When there is no physical injury or impact on the plaintiff—in other words, when the plaintiff is a bystander and not the direct victim—the plaintiff may recover damages for emotional distress only if the plaintiff:

> (1) is closely related to the injury victim; (2) is present at the scene of the injury producing event at the time it occurs and is then aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress—a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances.

*Thing v. La Chusa*, 48 Cal. 3d 644, 667–68 (Cal. 1989). Here, Plaintiff Shridhar was married to Decedent at the time of the incident, (*see* Shridhar Decl. ¶¶ 2–4), and thus was closely related to her. *See Thing*, 48 Cal. 3d at 666 (explaining that recovery for NIED is limited to persons closely related by blood or marriage). Further, Plaintiff Shridhar states that he suffered "severe emotional distress" as a result of his wife's injury and subsequent death. (Shridhar Decl. ¶ 14.) Thus, Plaintiff Shridhar satisfies the third element of an NIED claim. At issue here is whether Plaintiff can satisfy the second element.

LINK:

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | CV 14-09793-BRO (PJWx) | | Date | January 7, 2016 |
|----------|------------------------|---|------|-----------------|
| Title | BASETI SHRIDHAR V. VANTAGE TRAVEL SERVICE, INC., ET AL. | | | |

According to Plaintiff Shridhar's own declaration, he did not actually witness his wife fall from the horse. He states,

> As I did not intend to ride, I looked away for a few moments, but then heard a commotion in the area where my wife was. I heard someone shouting something like, 'you're wife has fallen[,]' and I started moving to where my wife was. I saw my wife was face down on the ground and was not moving. . . . I ran to her and I could see she was bleeding . . . and her eyes were closed.

(Shridhar Decl. ¶ 13.) Plaintiff Shridhar argues that he satisfies the second NIED requirement because he arrived while the event causing his wife's injury was in progress. (Opp'n at 23.) Defendant contends that although Plaintiff Shridhar was present at the scene, he did not witness the injury and only learned of his wife's injury after the event causing the injury had taken place. (Mot. at 24.)

The second NIED element "does not require visual perception of an impact on the victim." *Ra v. Superior Court*, 154 Cal. App. 4th 142, 149 (2007). "A plaintiff may recover based on an event perceived by other senses so long as the event is contemporaneously understood as causing injury to a close relative." *Id.* (internal quotation marks omitted). "[S]omeone who hears an accident but does not then know it is causing injury to a relative does not have a viable [bystander] claim for [negligent infliction of emotional distress], even if the missing knowledge is acquired moments later." *Id.* (internal quotation marks omitted). "It is the traumatic effect of the perception of the infliction of injury on a closely related person . . . that is actionable, not the observation of the consequences of the occurrence." *Id.* at 152. In sum, "under controlling [California] Supreme Court precedent[,] the absence of contemporaneous sensory awareness of the causal connection between the [injury-producing event] and the resulting injury precludes recovery" under a theory of NIED. *Id.* at 149 (internal quotation marks omitted).

Plaintiff Shridhar contends that he satisfies the contemporary sensory awareness requirement because "[h]e was in the immediate vicinity of the fall and saw [Decedent's] injuries as they continued while [Decedent] was on the ground." (Opp'n at 24.) He cites *Zuniga v. Housing Authority of Los Angeles*, 41 Cal. App. 4th 82 (Cal. Ct. App. 1995),

| Case No. | CV 14-09793-BRO (PJWx) | | Date | January 7, 2016 |
|----------|------------------------|--|------|-----------------|
| Title | **BASETI SHRIDHAR V. VANTAGE TRAVEL SERVICE, INC., ET AL.** | | | |

and *Walsh v. Tehachapi Unified School District*, 827 F. Supp. 2d 1107 (E.D. Cal. 2011) to support his position. In *Zuniga*, the plaintiff arrived at his relative's residence after the paramedics and fire department were on the scene, but while a fire was still causing damage to the home and possibly still causing injuries to his relatives inside. *Zuniga*, 41 Cal. App. 4th at 103. While at the scene, and while the home was still burning, the plaintiff witnessed the body of his daughter being carried from the home. *Id.* at 102. The Court held that these facts satisfied the contemporaneous perception requirement because the plaintiff was witnessing his daughter's injury while the event giving rise to her injuries was still in progress. *Id.* at 103. In *Walsh*, the court concluded that the plaintiff sufficiently pleaded the contemporaneous perception element by alleging that she arrived at the scene of her son's suicide after her son had already attempted to hang himself, but while he was still alive and choking. *Walsh*, 827 F. Supp. 2d at 1126. The court construed the alleged facts in the light most favorable to the plaintiff and found that the plaintiff sufficiently pleaded that she witnessed the injury-producing event as it was occurring. *Id.*

Defendant contends that these cases are distinguishable because Plaintiff Shridhar did not witness the injury-producing event. (Mot. at 24; Reply at 12.) The Court agrees and notes that *Ra* is analogous to this case. In *Ra*, the court held that the plaintiff could not recover emotional distress damages under a theory of NIED when the plaintiff did not see a sign fall from the ceiling and hit her husband's head, despite the fact that she immediately turned to see her husband holding his head in pain after she heard a "loud bang." *Ra*, 154 Cal. App. 4th at 145. The court held that "Ra, . . . although aware by virtue of the loud bang that some traumatic event had occurred, did not clearly and distinctly perceive the injurious impact of the overhead sign falling until she looked in her husband's direction after the sign was already on the ground." *Id.* at 151.

Here, Plaintiff Shridhar cannot prevail on his NIED claim because, like the plaintiff in *Ra*, he did not perceive the injurious event that caused Decedent's injury. (*See* Shridhar Decl. ¶ 13.) Also, similar to *Ra* where the plaintiff did not observe her husband's injuries until after the sign had already fallen and injured her husband, Plaintiff Shridhar only observed Decedent's injuries *after* the horse had already fallen and

LINK:

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 14-09793-BRO (PJWx) | Date | January 7, 2016 |
|---|---|---|---|
| Title | BASETI SHRIDHAR V. VANTAGE TRAVEL SERVICE, INC., ET AL. | | |

returned to its feet.[4]  Thus, unlike the plaintiffs in *Zuniga* and *Walsh* who perceived the injury-causing event, here, the injury-causing event was no longer in progress when Plaintiff Shridhar turned to see his wife lying on the ground.  Further, like the plaintiff in *Ra*, Plaintiff Shridhar only perceived the resulting injury.  Thus, Plaintiff Shridhar cannot satisfy the second element of his NIED claim because he cannot establish the requisite "contemporaneous sensory awareness of the causal connection between the [injury-producing event] and the resulting injury."  *Ra*, 154 Cal. App. 4th at 149.

For the foregoing reasons, the Court **GRANTS** Defendant's Motion with regard to Plaintiff Shridhar's NIED claim.

### C.    Negligence

Plaintiffs also seek to recover damages arising out of Defendant's general negligence in allowing Decedent to mount an unsafe horse.  (FAC ¶¶ 39–46.)  Defendant's principal argument in support of its Motion for Summary Judgment is that it did not owe Decedent a duty of care, which is the primary issue before the Court.

While Defendant argues that widely accepted case law supports its position that it cannot be liable for the negligent conduct of independent contractors, (Mot. at 4–13), Plaintiffs clarify that their "claims and supporting evidence show that [Decedent's] injuries were caused by the gross negligence and recklessness of [Defendant's] employee and program manager, Ignacio 'Nacho' Eiras," (Opp'n at 1).  Thus, according to Plaintiffs, Defendant incorrectly focuses on the negligence of third parties and attempts to divert the Court's focus to a non-material issue.  (*See* Opp'n at 1.)

Defendant also contends that it cannot be liable because Decedent expressly assumed the risk of the horseback riding activity by signing a waiver absolving Viajes, the Ranch, and their "affiliates" of liability arising out of their ordinary negligence in connection with the horseback riding activity.  (Mot. at 13–16.)  Plaintiffs point out that

---

[4] Although Plaintiff Shridhar does not specifically state that the horse was no longer on top of Decedent when he saw her lying on the ground, the Court infers this fact based on the declaration of Michael Verlatti, who stated that the horse quickly returned to its feet after throwing Decedent from its back. (Verlatti Decl. at 2.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 14-09793-BRO (PJWx) | Date | January 7, 2016 |
|---|---|---|---|
| Title | BASETI SHRIDHAR V. VANTAGE TRAVEL SERVICE, INC., ET AL. | | |

Decedent signed the liability release without sufficient time to read it, (Opp'n at 4); the release only applies to Viajes and the Ranch, and Defendant is not an "affiliate," (Opp'n at 15–16); and the release does not absolve Defendant of its own employee's negligence, (Opp'n at 16–17).

Defendant also maintains that even assuming Decedent did not expressly absolve Defendant of liability, Defendant cannot be liable because Decedent impliedly assumed the risk of the dangers inherent in horseback riding by voluntarily choosing to take part in the horseback riding activity. (Mot. at 16–19.) Plaintiffs counter that although the primary assumption of risk doctrine applies, Plaintiffs overcome that defense because Mr. Eiras increased the risk of injury to Decedent by placing her in the category of "experienced" riders, despite the fact she was seventy-one years old and had only ridden a few times. (Opp'n at 20–21.)

## 1. Tour Participation Agreement

Defendant first argues that the limitation of liability provision in the tour participation agreement that it purportedly sent to Decedent and Plaintiff Shridhar prior to their South America trip absolves it of liability. (Mot. at 5–8.) The provision essentially states that Defendant is not liable for the actionable conduct of independent contractors.[5] (*See* Ferullo Decl. ¶ 14, Ex. D.) Although Plaintiffs contend they did not sign and were not aware of the agreement, they concede that the invoice Defendant sent them prior to

---

[5] The tour participation agreement's responsibilities and liabilities provision provides, in relevant part:

> The Suppliers providing travel services for Vantage's tour programs are independent contractors, and are not agents or employees of Vantage. As such, Vantage is not responsible for direct, indirect, consequential, or incidental damage, injury, loss, accident, delay, or irregularity of any kind occasioned by reason of any act or omission beyond its control, including, without limitation, any negligent or willful act or failure to act . . . by . . . any Supplier or any other third party. . . . By utilizing the travel services of the Suppliers, you agree that you will look to such Suppliers for any accident, injury, property damage, or personal loss to you or to those traveling with you, and that neither Operator nor any representative of Operator shall be liable.

(Ferullo Decl. ¶ 14, Ex. D.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 14-09793-BRO (PJWx) | Date | January 7, 2016 |
|---|---|---|---|
| Title | BASETI SHRIDHAR V. VANTAGE TRAVEL SERVICE, INC., ET AL. | | |

completing payment for the trip included a clause stating that by submitting final payment, Decedent and Plaintiff Shridhar were agreeing to the terms of the tour participation agreement. (Opp'n at 18–20.) Courts routinely uphold limitation liability provisions in factually similar situations, even where the liability limiting clauses are not the result of bargaining between the parties. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991) (upholding the validity of a forum-selection clause on the back of a cruise ticket); *Ramage*, 987 F. Supp. at 815 (upholding a liability-limiting provision where the limitation of liability clause was on a separate document, but just above the signature block where the plaintiff was required to sign to confirm the vacation was a clause indicating that by signing, the plaintiff acknowledged that he or she has read and understood the separate document containing the liability-limiting provision).

Notwithstanding the validity of the tour participation agreement, it is irrelevant in this case. As discussed above, Plaintiffs do not seek to recover for the negligence of Defendant's independent contractors. Rather, Plaintiffs' general negligence claim against Defendant arises out of the conduct of its "employee," Mr. Eiras. Thus, that the tour participation agreement absolves Defendant of third parties' negligence is of no moment. However, by focusing on Mr. Eiras's conduct as the basis of Defendant's negligence, Plaintiffs predicate their negligence claim on the presumed fact that Mr. Eiras was an employee of Defendant, and not an independent contractor.[6]

---

[6] Defendant also contends that it is not subject to liability because Decedent signed a liability release before she participated in the horseback riding activity, expressly waiving any right to sue Viajes, the Ranch, and their "affiliates" for injuries arising out of their negligence in connection with the horseback riding activity. (Mot. at 13–16.) From the face of the form, it is apparent that it absolves Viajes, the Ranch, and their affiliates of liability relating to (1) injuries arising out of horseback riding, and (2) injuries arising out of the ordinary negligence or gross negligence of Viajes and the Ranch. (*See* Eiras Decl. ¶ 6, Ex. A.) Given that Plaintiffs focus on the negligence of Mr. Eiras, not Viajes or the Ranch, the latter clause is inapplicable. Further, "being thrown off a horse [i]s an inherent risk of horseback riding." *Levinson v. Owens*, 176 Cal. App. 4th 1534, 1545 (Cal. Ct. App. 2009). Thus, the issue centers on whether Defendant is an "affiliate" of Viajes or the Ranch, as defined in the liability release form. The liability release form defines an "affiliate" as "any person or entity that directly or indirectly controls, or is controlled by, or is under common control with such other person or entity, but shall not include independent contractors, suppliers or the like." (Eiras Decl. ¶ 6, Ex. A.) However, there is no evidence that Defendant controlled, was controlled by, or was in common control with either Viajes or

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 14-09793-BRO (PJWx) | Date | January 7, 2016 |
|----------|------------------------|------|-----------------|
| Title | BASETI SHRIDHAR V. VANTAGE TRAVEL SERVICE, INC., ET AL. | | |

## 2. Ignacio Eiras's Status as an Employee or Independent Contractor

Under California law, the factors identified in *S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal. 3d 341 (Cal. 1989) govern the inquiry into the employment relationship between individuals and the entities for which they work. The first and "principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the desired result." *Ybarra v. John Bean Techs. Corp.*, 853 F. Supp. 2d 997, 1003 (E.D. Cal. 2012); *Borello*, 48 Cal. 3d at 350.[7] The remaining eight factors are as follows:

> (1) whether the worker is engaged in a distinct occupation or business, [2] whether, considering the kind of occupation and locality, the work is usually done under the principal's direction or by a specialist without supervision, (3) the skill required, (4) whether the principal or worker supplies the instrumentalities, tools, and place of work, (5) the length of time for which the services are to be performed, (6) the method of payment, whether by time or by job, (7) whether the work is part of the principal's regular business, and (8) whether the parties believe they are creating an employer-employee relationship.

*Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1013 (N.D. Cal. 2010) (quoting *Estrada v. FedEx Ground Package Sys., Inc.*, 154 Cal. App. 4th 1, 10 (Cal. Ct. App. 2007)). "[T]he individual factors cannot be applied mechanically as separate tests; they are intertwined and their weight depends often on particular combinations." *Borello*, 48 Cal. 3d at 351 (internal quotation marks omitted).

---

the Ranch. Moreover, Defendant consistently disclaims having any control over Viajes and the Ranch, and frequently clarifies that each is a third party, independent contractor. (*See* Ferullo Decl. ¶¶ 6–8; Mot. at 8.) Accordingly, Defendant was not an "affiliate" within the meaning of the liability release form, thus the release does not absolve Defendant of liability.

[7] Another factor is whether the employer has the right to discharge the individual at will, without cause. *Borello*, 48 Cal. 3d at 350. However, because that information is not before the Court, the Court will not consider it in this analysis.

| Case No. | **CV 14-09793-BRO (PJWx)** | | Date | January 7, 2016 |
|---|---|---|---|---|
| Title | **BASETI SHRIDHAR V. VANTAGE TRAVEL SERVICE, INC., ET AL.** | | | |

As applied here, the *Borello* test indicates that Mr. Eiras was an employee of Defendant, rather than an independent contractor. The first and most important factor, right to control the manner and means of the work, weighs heavily in favor of Mr. Eiras's status as an employee. In her deposition, Ms. Ferullo unequivocally stated that Defendant, not Mr. Eiras, controlled the day-to-day itinerary of Defendant's tours. (Ferullo Dep. at 125:4–10.) Mr. Eiras's job was to accompany the passengers throughout the tours, (Ferullo Dep. at 122:8–10), ensure that Defendant's itineraries were carried out as planned, (Ferullo Dep. 125:11–15), and ensure that the customers had safe, healthy, and happy trips, (Ferullo Dep. 122:23–123:8). Ms. Ferullo also stated that Mr. Eiras did not have discretion to change a feature of the itinerary without Defendant's approval. (Ferullo Dep. at 128:17–20.) Given these facts, Defendant possessed the right to control the manner and means of Mr. Eiras's work.

As for the other factors, they also weigh in favor of the conclusion that Mr. Eiras was an employee of Defendant. For example, based on the information before the Court, Mr. Eiras is not engaged in a distinct occupation or business, his work is done under Defendant's direction, and accompanying elderly tourists throughout South America does not require a high level of skill. Further, Defendant provides the instrumentalities of Mr. Eiras's work by contracting with independent contractors, like Viajes, to provide ground services which Mr. Eiras uses to accompany Defendant's customers on the tours. The parties did not present evidence regarding the length of Mr. Eiras's services or the method by which Defendant pays Mr. Eiras. However, the final two factors also weigh in favor of finding that Mr. Eiras was an employee, because accompanying tourists is part of Defendant's regular business as a tour operator, and, based on Ms. Ferullo's statement that she believed Mr. Eiras was an employee of Defendant, (Ferullo Dep. at 135:3–8), the parties apparently believed they were creating an employer-employee relationship.

In light of the foregoing, the Court concludes that Mr. Eiras was an employee of Defendant at all relevant times.

### 3. Defendant Did Not Owe Decedent a Duty of Care

As discussed above, Plaintiffs also argue that Defendant owed Decedent a general duty of care. (Opp'n at 9.) However, the Court concludes that Plaintiffs fail to rebut Defendant's evidence that as a tour operator, Defendant owed Decedent no such duty. At

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 14-09793-BRO (PJWx)** | Date | January 7, 2016 |
| Title | **BASETI SHRIDHAR V. VANTAGE TRAVEL SERVICE, INC., ET AL.** | | |

the hearing of the instant motion, Plaintiffs' counsel argued that the following facts establish Defendant's duty: (1) the brochure Defendant provided to Decedent and Plaintiff Shridhar prior to their trip states that program managers, such as Mr. Eiras, are "spectacularly knowledgeable" about the tour destinations; (2) Defendant controlled the day-to-day itinerary of the tourists; and, (3) Decedent and Plaintiff Shridhar made a single payment for all activities on the tour, including the horseback riding activity. Defendant countered, arguing (1) the brochure only states that program managers are generally knowledgeable about the tour destinations, not the specific excursions that take place at those destinations; (2) the horseback riding activity was optional and not a selling point of the tour; and, (3) this case is analogous to *Carley v. Theater Development Fund*, 22 F. Supp. 2d 224 (S.D.N.Y. 1998), where the court held that a tour operator was not liable for the hotel's negligence even though the tour operator's employee vetted the safety of the hotel room in which one of the plaintiffs was injured.

First, case law generally supports Defendant's position that tour operators do not owe a duty of care to tour participants for injuries caused by the negligent conduct of independent contractors, especially where, as here, the plaintiff acknowledges the existence of a liability limiting provision specifically disclaiming such liability. *See, e.g.*, *Ramage*, 987 F. Supp. at 815. To the extent Plaintiffs argue Defendant assumed a duty of care based on Mr. Eiras's presence at the Ranch, the *Carley* case indicates otherwise.

In *Carley*, one of the plaintiffs was injured while attempting to open her hotel window after the tour operator's employee physically inspected the room and told the plaintiffs that the room was safe. *Carley*, 22 F. Supp. 2d at 226, 228. The plaintiffs sued the tour operator, arguing that the tour operator owed the plaintiffs a duty of care to ensure the non-negligent operation of the hotel, and that the tour operator, through the actions of its employee, assumed a duty of care by inspecting the hotel room. *Id.* at 228. The court first recited the general principle that "sponsors and operators of international tours do not have a duty to tour participants to insure the non-negligent performance of hotel services by independent contractors." *Id.* at 227–28. The court then explained that the plaintiffs failed to introduce evidence sufficient to raise an issue as to whether the tour operator assumed such a duty when its employee inspected the room. *Id.* at 228. The court held that even though the employee inspected the room and told the plaintiffs the room was safe, that did not put the plaintiffs in a more vulnerable position than they would have been in originally. *Id.*

| Case No. | CV 14-09793-BRO (PJWx) | | Date | January 7, 2016 |
|----------|------------------------|---|------|-----------------|
| Title | **BASETI SHRIDHAR V. VANTAGE TRAVEL SERVICE, INC., ET AL.** | | | |

Here, assuming Plaintiffs' version of the facts as true, like the employee in *Carley*, Mr. Eiras did not assume a duty of care by segregating the riders into experienced and inexperienced groups. By splitting the groups, Mr. Eiras was not guaranteeing that the Ranch's employees would non-negligently choose Decedent's horse. Further, compared to the employee in *Carley*, Mr. Eiras was less likely to have assumed a duty because he merely divided riders into groups based on the individual's own representations of their riding experiences, whereas the employee in *Carley* actually inspected the hotel room and opined that the room was safe. By contrast, Mr. Eiras did not inspect the horses, nor did he affirmatively state that the horse chosen for Decedent was safe. Thus, Mr. Eiras, and thus Defendant, did not assume a duty of care by separating the tour guests into groups of experienced and inexperienced riders. However, as discussed below, even assuming Mr. Eiras owed some limited to duty to Decedent imposed by the primary assumption of risk doctrine not to increase the risk of harm inherent in horseback riding, there is no triable issue as to whether he breached that duty.

### 4. Primary Assumption of Risk

"The risk of injury is inherent in certain sporting activities." *Levinson*, 176 Cal. App. 4th at 1543. "Accordingly, those who participate in such a sporting activity generally assume the risk that they may be injured while doing so." *Id.* The primary assumption of risk doctrine provides that others having a role in the sporting activity "'generally have no legal duty to eliminate (or protect a [participant] against) risks inherent in the sport itself.'" *Id.* (quoting *Kahn v. E. Side Union High Sch. Dist.*, 31 Cal. 4th 990, 1003 (Cal. 2003)). "However, they 'generally do have a duty to use due care not to increase the risks to a participant over and above those inherent in the sport.'" *Id.* (quoting *Knight v. Jewett*, 3 Cal. 4th 296, 315 (Cal. 1992)). This doctrine exists "because, 'as a matter of policy, it would not be appropriate to recognize a duty of care when to do so would require that an integral part of the sport be abandoned, or would discourage vigorous participation in sporting events.'" *Id.* (quoting *Kahn*, 31 Cal. 4th at 1004).

In the context of horseback riding, "[t]he rider generally assumes the risk of injury inherent in the sport." *Id.* at 1545. One inherent risk is being thrown from the horse, which "is one of the most obvious risks of [horseback riding], and readily apparent to anyone about to climb on a horse." *Id.* (internal quotation marks omitted). "Another

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 14-09793-BRO (PJWx) | | Date | January 7, 2016 |
|---|---|---|---|---|
| Title | **BASETI SHRIDHAR V. VANTAGE TRAVEL SERVICE, INC., ET AL.** | | | |

person does not owe a duty to protect the rider from injury by discouraging the rider's vigorous participation in the sport." *Id.* Rather, a person owes the "horseback rider only two duties: (1) to not 'intentionally' injure the rider; and (2) to not increase the risk of harm beyond what is inherent in [horseback riding] . . . by engag[ing] in conduct that is so reckless as to be totally outside the range of the ordinary activity involved in the sport." *Id.* (internal quotation marks and citation omitted). "With respect to increasing the risk of harm, the duty may vary according to the role played by particular [persons] involved in the sport . . . and the nature of the particular riding activity at issue." *Id.* at 1546 (internal quotation marks and citation omitted).

As discussed above, Decedent volunteered to participate in the horseback riding activity. (Shridhar Decl. ¶ 11.) Thus, the primary assumption of risk doctrine applies because Decedent assumed the risks of harm inherent in horseback riding, including injuries resulting from being thrown from the horse. Given that Plaintiffs predicate their negligence claim on Mr. Eiras's alleged negligence, to prevail on this claim, Plaintiffs must counter Defendant's evidence and establish a triable issue of fact that Mr. Eiras owed Decedent a limited duty under the primary assumption of risk doctrine, and that he either (1) intentionally injured Decedent or (2) recklessly increased the risk of harm to Decedent.

Here, Plaintiffs contend that Mr. Eiras increased the risk of harm to Decedent by placing Decedent in a group of "experienced" riders, despite the fact she indicated that she had only ridden a few times in her seventy-one years. (Opp'n at 4; Shridhar Decl. ¶ 11.) They also claim that Mr. Eiras observed the Ranch's employees' attempts to place Decedent on the allegedly erratic horse. (Decl. of Preeti Prakash Kulkarni ("Preeti Decl.") ¶ 12.) Mr. Eiras, on the other hand, claims that the Ranch employees asked which tourists were experienced riders, thus the Ranch employees, not Mr. Eiras, divided the tourists into groups of experienced and inexperienced riders. (Eiras Decl. ¶ 6.) Although Mr. Eiras does not disclaim having observed the Ranch employees placing Decedent on the horse, he states that he did not assist Decedent in mounting the horse, nor did he select the horse upon which Decedent was mounted. (*Id.*) Plaintiffs do not dispute that the Ranch employees chose the horse and placed Decedent on it. However, Mr. Eiras also claims that he did not perceive the horse chosen for Decedent to have behaved in a dangerous way. (Eiras Decl. ¶ 7.) Plaintiffs contest this statement, claiming that Mr. Eiras told Plaintiff Preeti that (1) he saw the Ranch employees helping Decedent

| Case No. | **CV 14-09793-BRO (PJWx)** | Date | January 7, 2016 |
|----------|----------------------------|------|-----------------|
| Title | **BASETI SHRIDHAR V. VANTAGE TRAVEL SERVICE, INC., ET AL.** | | |

mount the horse and (2) the horse seemed scared and behaved erratically.  (Preeti Decl. ¶ 12.)

To summarize, the following facts are undisputed: (1) Mr. Eiras was present at the Ranch; (2) Mr. Eiras observed the Ranch employees choosing and placing Decedent on the horse; (3) Mr. Eiras did not choose the specific horse upon which Decedent was mounted; and, (4) Mr. Eiras did not help Decedent mount the horse.  The following facts are facts are disputed: (1) whether Mr. Eiras participated in separating the tourists into groups of "experienced" and "inexperienced" riders before they mounted the horses; and, (2) whether Mr. Eiras perceived the erratic behavior of Decedent's horse.  Yet, to defeat summary judgment, Plaintiffs must identify a genuine dispute of *material* fact. *Matsushita*, 475 U.S. at 587.  Thus, assuming the truth of Plaintiffs' version of the facts and assuming that Mr. Eiras owed Plaintiffs a limited duty of care imposed under the primary assumption of risk doctrine,[8] the question is whether Mr. Eiras recklessly increased the risk of harm to Decedent by assigning Decedent to the "experienced" group of riders.[9]  *See Anderson*, 477 U.S. at 248 (holding that only genuine disputes over facts that might affect the outcome of the lawsuit will properly preclude the entry of summary judgment).

To support its position that it is not liable under the primary assumption of risk doctrine, Defendant cites *Harrold v. Rolling J Ranch*, 19 Cal. App. 4th 578 (Cal. Ct. App. 1993).  (Mot. at 17–18.)  However, *Harrold* is not instructive here because it involved a horse owner's duty to warn patrons of a horse's propensity for erratic behavior.  *Harrold*, 19 Cal. App. 4th at 587.  Defendant also cites a non-citable case, *Beatty v. Alvarez*, No. E032436, 2003 WL 21470302 (Cal. Ct. App. June 26, 2003), which addressed the same

---

[8] As discussed above, California case law provides that, in the context of horseback riding, a "person owes the horseback rider" a duty not to "increase the risk of harm beyond what is inherent in [horseback riding]." *Levinson*, 176 Cal. App. 4th at 1545.  Based on this language, it is unclear whether an individual in Mr. Eiras's position—an employee of a tour operator unaffiliated with the horse's owner or caretaker—is a "person" who owed this limited duty to Decedent.  However, the Court need not determine whether the limited duty applies to Mr. Eiras, because even assuming it does apply, Mr. Eiras did not recklessly increase the risk of harm inherent in horseback riding by separating the riders into groups.

[9] Plaintiffs do not argue that Mr. Eiras intentionally injured Decedent.

LINK:

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 14-09793-BRO (PJWx) | Date | January 7, 2016 |
|---|---|---|---|
| Title | BASETI SHRIDHAR V. VANTAGE TRAVEL SERVICE, INC., ET AL. | | |

issue. Both *Harrold* and *Beatty* are distinguishable from the present case, because here, the alleged negligent conduct is that of Mr. Eiras, who did not own the horse and had no duty to warn of a horse's dangerous propensities given his obvious lack of such knowledge. At issue here is whether Mr. Eiras's act of assigning Decedent to the "experienced" group recklessly increased the risk of injury to Decedent.

Plaintiffs also cite distinguishable cases. For example, Plaintiffs cite *Eriksson v. Nunnink*, 191 Cal. App. 4th 826 (Cal. Ct. App. 2011), in which the California Court of Appeal reversed the superior court's grant of summary judgment in the defendant's favor. *Id.* at 858. *Eriksson* involved a horseback riding coach's alleged negligence, which caused the plaintiff to fall from a horse that was purportedly unfit for equestrian competition. *Id.* at 830. In reversing the superior court, the court noted the principle that "a coach has a duty of ordinary care not to increase the risk of injury to a student by encouraging or allowing the student to participate in the sport when he or she is physically unfit to participate or by allowing the student to use unsafe equipment or instruments." *Id.* at 845. Thus, the decision in *Eriksson* turned on whether a coach provided a suitable, safe horse sufficient for competition. Here, Mr. Eiras was not an instructor and did not supply the horses. Thus, *Eriksson* does not control in this case.[10]

A dearth of case law exists regarding this narrow issue. However, the Court finds that, although it is distinguishable in certain respects, *Cohen v. Five Brooks Stable*, 159 Cal. App. 4th 1476 (Cal. Ct. App. 2008) is most instructive. In that case, a patron who fell from a rented horse filed a negligence claim against the operator of the stable based on the negligence of the operator's employee. *Id.* at 1480–82. After the superior court granted the defendant's summary judgment motion, the California Court of Appeal reversed, holding that there was a triable issue of fact as to whether the defendant's employee recklessly increased the risk of harm to other riders by intentionally provoking his horse into a gallop without first warning other riders, knowing the horses behind him would follow and adjust to the speed of the his horse. *Id.* at 1494. The Court held that a reasonable jury could have found such conduct to be "so reckless as to be totally outside the range of the ordinary activity involved." *Id.*

---

[10] Plaintiffs also cite *Giardino v. Brown*, 98 Cal. App. 4th 820 (Cal. Ct. App. 2002), in which the court addressed the same issue as the court in *Eriksson*. Thus, *Giardino* is also distinguishable, and the Court will not discuss the case in detail.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 14-09793-BRO (PJWx) | Date | January 7, 2016 |
|---|---|---|---|
| Title | BASETI SHRIDHAR V. VANTAGE TRAVEL SERVICE, INC., ET AL. | | |

Here, unlike *Cohen*, even assuming Plaintiffs' version of the facts, a reasonable jury could not find that by asking riding participants whether they had ever ridden a horse, Mr. Eiras engaged in conduct that was so reckless as to be totally outside the range of the ordinary activity involved in horseback riding. Conversely, inquiring into the riding experience of tourists prior to a horseback riding excursion is more accurately described as cautious conduct. That the Ranch's employees later placed Decedent on a horse that was apparently unfit for riding does not impute liability to Mr. Eiras, and therefore Defendant. Mr. Eiras distinguished riders with no experience from riders with some experience, and even assuming he had a continuing duty to ensure Decedent's safety after separating the groups, he was entitled to rely on the knowledge and experience of the Ranch's employees to decide which horse was best suited for Decedent. This is because, based on the evidence before the Court, Mr. Eiras was not a horse expert at the time of the incident. And in his multiple visits to the Ranch, nothing occurred that gave him reason to doubt the judgment of the Ranch's employees in selecting the appropriate horse for Decedent. (Eiras Decl. ¶ 5.) Although the Ranch's employees may have placed Decedent on a horse unfit for a rider of Decedent's age and experience, no reasonable juror could determine that *Mr. Eiras's* conduct was so reckless as to be totally outside the range of the ordinary activity involved in horseback riding. Thus, assuming Plaintiffs' version of the fact as true, the Court concludes that there is no triable issue as to whether Mr. Eiras recklessly increased the risk of harm to Decedent.

Accordingly, the Court finds that, even assuming Mr. Eiras owed Decedent a limited duty of care, the primary assumption of risk doctrine absolves Defendant of liability for the injuries Decedent suffered when she fell from the horse at the Ranch on January 23, 2013. As such, Defendant's Motion is **GRANTED** with respect to Plaintiffs' general negligence cause of action.[11]

---

[11] Plaintiffs also argue that Defendant is liable because the Ranch did not provide Decedent with a helmet. However, Decedent voluntarily mounted the horse without a helmet, and thus assumed the obvious risk of riding a horse without protective headgear. Further, it was the Ranch or Viajes, not Defendant, who failed to provide Decedent with a helmet. Thus, Plaintiffs' helmet argument does not alter the Court's conclusion regarding Plaintiffs' negligence claim.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 14-09793-BRO (PJWx) | | Date | January 7, 2016 |
|---|---|---|---|---|
| Title | BASETI SHRIDHAR V. VANTAGE TRAVEL SERVICE, INC., ET AL. | | | |

### D.    Loss of Consortium

Plaintiff Shridhar seeks to recover damages under a theory of loss of consortium. The four elements of a cause of action for loss of consortium are: "(1) a valid and lawful marriage between the plaintiff and the person injured at the time of the injury; (2) a tortious injury to the plaintiff's spouse; (3) loss of consortium suffered by the plaintiff; and (4) the loss was proximately caused by the defendant's act." *Vanhooser v. Superior Court*, 206 Cal. App. 4th 921, 927 (Cal. Ct. App. 2012) (internal quotation marks omitted). "A cause of action for loss of consortium is, by its nature, dependent on the existence of a cause of action for tortious injury to a spouse." *Id.* (internal quotation marks omitted).

Here, Plaintiff Shridhar's loss of consortium claim is predicated upon Defendant's negligence. However, as discussed above, Plaintiffs have failed to carry their burden to create a triable issue of fact regarding their negligence claim. Thus, Plaintiff Shridhar's loss of consortium claim also fails as a matter of law. Accordingly, Defendant's Motion is **GRANTED** with respect to this claim.

## VI.    CONCLUSION

As a result of the foregoing, the Court **GRANTS** Defendant's Motion for Summary Judgment in its entirety. Defendant is ordered to lodge a proposed Judgment by January 11, 2016 by 4:00 p.m. All pending dates are VACATED.

**IT IS SO ORDERED.**

_____ :

Initials of Preparer                          rf